11 WARD, Judge,
concurs with reasons.
I respectfully concur. The City of New Orleans and the City Civil Service Board erred by proceeding on the assumption that Mrs. Preen was a temporary “provisional employee,” one who could be terminated without cause. As a consequence, the City and its appointing authority, Morris F.X. Jeff, failed to follow Civil Service Rules for termination of Mrs. Preen who was a permanent “regular” employee. She must be reinstated.
State statutes and Civil Service Rules categorizes classified employees as either “regular” employees or “working test” employees. Civil Service Rule 1, Sections 50 and 64. For the first six months of employment, all classified employees are “working test period employees.” Civil Service Rule VII, Section 1 et seq. After six months, “a working test employee” becomes a “regular” employee unless terminated. A “working test” employee is synonymous with a “probational” employee, but it is not the same as a temporary “provisional” employee.
Employment of temporary “provisional employees” is authorized by Civil Service Rule VI, Section 5.3., but it is clear a “provisional” employee is a temporary employee, one hired for a short duration.
5.3 Temporary appointments to positions in the classified service may be made for short periods without compliance with the provisions of this Part requiring certificate, as follows:
(a) Provisional appointments. When a vacancy is to be filled in a position of a class for which there are no eligibles available for certification, the appointing authority, with the prior approval of the Director, *1134 may make a provisional appointment.... Such provisional appointment shall terminate upon the regular filling of the vacancy in any manner authorized under these Rules, and in any event, within fifteen working days after a certification from which appointment can be required.
* * * * * *
I2AS Civil Service Rule 5.3 indicates, provisional employment contemplates appointment of temporary employees when qualified eligi-bles are not available. That is not the situation here. Mrs. Preen was eminently qualified and eligible for employment as a Nurse and as a supervisor, having worked as a nurse for more than 15 years and as a supervisor for 2 years. She was studying for a baccalaureate nursing degree from Loyola when she was first employed as a supervisor by the City. She was not a provisional appointment; hired only to be replaced when another qualified eligible nurse was available for appointment.
Preen’s exhibit # 5, shows that Mr. Lumbi recommended to Mr. Jeff that he appoint Mrs. Preen as “Nursing Service Supervisor (C5124)”, the title and classification clearly indicating that this was for permanent employment, not provisional. Preen’s exhibit # 7 shows that the Civil Service advertisement for a Nursing Services Supervisor was for employment as a permanent employee. Preen’s exhibit # 9 shows Preen took the Civil Service exam for a Nursing Services Supervisor, “Graduate Nurse II”, and she passed with 85%. Exams are not given to “provisional employees.” Finally, appointment of a provisional employee must be approved by the Director of Civil Service. Civil Service Rules 5.3(a). Neither Lumbi nor Jeff obtained approval.
The only evidence that Preen was appointed as a “provisional” employee are the letters of Lumbi and Jeff, confected only after Lum-bi became unhappy with Preen. Their conception of Preen’s status does not square with the facts or civil service rules, and their after-the-fact designation is meaningless. The record convincingly shows that Mrs. Preen was promoted to supervisor as a permanent employee.
By Civil Service Rules, after Mr. Jeff appointed Mrs. Preen as a Supervisor, she was a “working test” employee, Civil Service Rules VII, 1.1, who was on probation as a nursing supervisor for six months — from March 20 until September 20, 1990. Although an appointing authority may remove a working test employee within the six months probationary period for reasons listed in Civil Service Rule VII, Section 1.1, if a working test employee is not removed, then that employee becomes a regular employee with all rights as a Civil Service classified employee. In this case, Preen’s appointing authority, Morris F.X. uJeff, did not remove Preen within the six month working test period. It was not until October 23, 1990, well beyond the six month period, that Jeff sought to terminate Preen. At that time, by operation of Civil Service Rules, Preen was a permanent, “regular” employee. Rule I, Section 50.
As a consequence, Mrs. Preen had all of the rights of other Civil Service employees, and this means that before Jeff could terminate Mrs. Preen, he had to have “cause” to do so. Messrs Jeff and Lumbi, however, proceeded as if Mrs. Preen were only a temporary provisional employee whom they could terminate at will. Unfortunately, the Civil Service Commission proceeded on that same erroneous assumption.
In summary, since it is clear Mrs. Preen became a working test employee and then a regular employee, when Preen appealed her discharge to the Civil Service Commission, the City had the burden to prove there was “cause”. For this reason alone, if for no other, the proceedings are flawed because the Board held that Mrs. Preen had the burden to prove discrimination. The City candidly acknowledges there was no cause. The Commission wrongly acquiesced in Preen’s termination because it believed she was only a provisional employee.
I agree with the dissent, racism is not the same as discrimination. But as I view this appeal neither racism nor discrimination is an issue because the City had the burden to show cause and there is nothing, zero, in the record that shows Morris F.X. Jeff had cause for terminating Mary Preen.